Garland, J.
To understand this case properly, it will be necessary to refer to those of Faurie, &c. v. Millaudon, &c. 3 Mart. N. S. 476, and Percy, &c. v. Millaudon, &c. 3 Mart. N. S. 68. 3 La. 568. After the decision against the defendants, Millaudon, Lanna and Abat in those cases, the plaintiffs, on the 18th of August, 1832, instituted this suit against Maunsel White and various other persons, who had been directors of the Planters Bank of Louisiana, in the years 1817, 1818, 1819, 1820, 1821, 1822, &c. Some of the defendants were directors for a part of the time only, and none for the whole period, excepting Millaudon, Abat and Lanna, whose case has been tried. McCall and Harrod were directors in 1817 only ; and several defendants were not directors until 1820, or subsequently.
The allegations in the petition are in substance the same as those in the case against Millaudon, &c. 8 Mart. N. S. 68. 3 La. 568. It is, therefore, not necessary to state them in detail. They charge the defendants with fraud and negligence in the discharge of their duties as directors, whereby the institution was ruined, and the stock lost. Various acts and specifications in different years are stated, as having occasioned the losses and damage ; but the petition charges nothing specially after the year *514 1821, as having been productive of loss, or as having caused damage to the bank or stockholders. There is a general allegation, that the conduct of the defendants as agents and directors, at divers times between the 1st day of January, 1821, and the 15th day of April, 1826, occasioned losses to the bank and the stockholders, to the amount of $300,000. The prayer is, that certain persons may be made parties besides those charged as directors, and that the directors of the different years may be condemned to pay damages for their misconduct and negligence in each year, at the rate of $300,000 _per annum. It is further asked, in case a decree be rendered against the directors who are charged, that out of the sum recovered the plaintiffs be decreed to receive $200 on each share of their stock as a dividend, and that the surplus be brought into court to be distributed in such manner as may seem just j and that a general and final settlement of the affairs of the bank may be had.
The various answers to this petition are pleas of res judicata, the general issue, various exceptions to the capacity of the parties to stand in judgment, and prescription. After a protracted trial in the inferior court, the-jury gave a general verdict in favor of the defendants, and the plaintiffs have appealed.
The cause has been argued in this court at great length, and we have taken time for full consultation and reflection, before coming to a conclusion.
It is to be observed that, as to the parties sued as directors, this is essentially an action for damages against certain directors for negligence, fraud and mismanagement, as the agents of the bank and of the plaintiffs as stockholders. They are charged as wrongdoers and unfaithful agents, and the damages are asked for, as an indemnity to those who have been injured. The charier of the bank expired in 1826. It is shown, if not admitted, that the concern is totally insolvent; and that, if nothing can be recovered in this action, there will be nothing to divide between the stockholders. So far,as the record shows, the debts of the institution have been paid, and this controversy is entirely between the stockholders; so that the action is to compel the agents of the bank to indemnify their principals for losses sustained and gains expected to be made. • As between the parties before us, this is *515 an action of damages ex contractu against mandataries. 3 La. 591. Taking it in that point of view, the defendants aver that it is prescribed, as no act is charged specifically after the year 1821 as having been injurious to the bank or the stockolders, and none is shown by the testimony, under the general allegation, subsequent to that year. In 3 La. 593, this court said, that the ruin of the bank was owing to the mismanagement in the years 1817, 1818 and 1819. In the year 1820 there were acts which, it is probable, would render the defendants liable; but subsequently to 1821, we cannot say that any act was committed by the directors, derogating from their duties as faithful mandataries.. The injury was inflicted previously, and the cousequences only developed themselves afterwards. Subsequently to 1821, but few of those who had brought ruin on the bank were in the direction and they cannot be made responsible for what they could not avert. This being the fact, we cannot see how the plaintiffs can avoid the plea of prescription, the suit having been brought more than ten years subsequent to any act which proved injurious to the interests of the stockholders.
The plaintiffs contend, that the prescription did not commence to run against them until the expiration of the charter of the bank iiflApril, 1826, as they were all partners in the same concern, and no action could be maintained against the defendants while the bank was in existence; and they rely upon the decision of this court, in 3 Mart. N. S. 476. That case assimilates a corporation to a partnership, andas a consequence, it was held, that the corporators could not maintain any action against each other relative to the affairs aud management of the corporate concerns, during its existence. We have re-examined the doctrine laid down in that case, and think it has been carried too far. The error consists, as we think, in assimilating things to each other, which are very different. The law makes a wide distinction between a corporation and a partnership. The one is an intellectual, the other is a real being. The responsibilities of partners towards each other, and towards third persons, are widely different from those of corporators towards each other, towards the corporation and individuals. There is consequently no- reason for saying they are to sue and be sued in the same manner. Angel & Ames, *516 in their treatise on Corporations, say, “ a corporation is an association quite distinct from a partnership(p. 23 ;) and -they proceed to point out the difference. The Civil Code of 1808 in the title on corporations, recognizes marked distinctions, and points them out in distinct terms. The present Civil Code is equally explicit, arts. 426, 427, 428; and see generally the titles which treat of corporations and partnership. The principles stated in the case in 3 Mart. N. S. 476, are correct in themselves, but we think they are not applicable to corporators. A corporation may sue one of its members, and he can sue it in turn.- Contracts made between them are valid and can be enforced. The property belonging to a corporation cannot be controlled by an individual member; but it is different with his stock. That he can control. He can sell it, give it away, and dispose of it as he pleases, His interest in it is distinct from that of the corporation, and the law gives him an action for the purpose of protecting it; which action he must exercise within the time prescribed by law. In 3 La. 585 this court said, “ directors of a bank have important duties to perform to its creditors and customers, the public and stockholders.” Competent and convenient means must therefore exist to compel them to perform those duties. A stockholder has a right to the preservation of his stock, and it cannot be possible that he is bound to wait until the dissolution of the corporation before he is entitled to exercise his right. It cannot be, that a stockholder must stand by for years and see the affairs of a corporation mismanaged, it ruined, and his stock lost, without a remedy. If the doctrine contended for be true, it would in many instances be equivalent to a denial of justice, as many of our corporations have nearly or quite half a century to exist, and one or more are perpetual.
The unfaithful agents of a corporation would most effectually be protected from responsibility, if they could not be sued until the expiration of the charter of the corporation which they have ruined or greatly injured. By the charter of several of our banks, it is not necessary that the directors of the branches shall be stockholders at all; and we suppose it will not be contended, that they are not suable before the expiration of the charter, for tortious acts, by which the capital of the branch may be entirely *517 lost. Would it not then be strange, if another director, equally culpable, should be protected, simply because he should own a few shares of the stock?
If the directors of banks abuse the authority and trust reposed in them, and thereby injure the corporation as a body, it can make them responsible for it, and the amount recovered of them goes into the common fund. An action to recover such damages must be brought within the time prescribed by law:. We also think, that if the directors of a bank or other corporation, having the control, so manage its affairs as to benefit themselves and injure the stockholders, they are liable in damages ; and, being so liable as individuals, they are entitled to have actions instituted against them, instituted within the time prescribed, if it were otherwise, the majority of the stockholders might sacrifice the interests of the minority, and there would be no remedy until such time as one would be useless. Suppose the directors of one of our banks to control a majority of the stock, and thus keep themselves in power, and so dispose of the funds as to render the stock of no value to any person but themselves ; would it not be considered almost preposterous to say that the ruined and despoiled stockholder must wait fifty years before a suit conld be brought to redress the injury ? Our reports are full of [cases in which stockholders have sued the corporations in which they were interested, and in turn been sued by them.
But to return to the real character of this action, it is one for damages against individuals, for injuries alleged to have been committed whilst acting as the agents of the plaintiffs ; and we are of opinion that it is prescribed.

Judgment affirmed.